AUGUSTA HITCH
vs.
JACOB G. DAVIS, AND OTHERS.

}   MARCH TERM, 1853.

[POWER OF THE COURT TO DECREE DEVISES UNDER ACT OF 1831, CH. 311.]

IT is not necessary that the party who applies to this Court to order a demise under the 5th section of the Act of 1831, ch. 311, should be the tenant in possession: the tenant of any particular estate, of full age, whether in possession or not, may apply under that section.

But the Court is not at liberty to order a demise under that act, unless it is made to appear affirmatively that the interest and advantage of all parties would be promoted by it.

A testator devised land, *in trust*, for his daughter for life, remainder to his granddaughter, the complainant, for life, remainder to the lawful issue of such granddaughter, in fee, if any such be living at the time of her death, but if none, then remainder to his daughter, M. D., for life, remainder in fee to her son, S. B. D.   Upon a bill by the complainant, under the Act of 1831, ch. 311, to have the land leased, it appearing by the proof that those who might be ultimately entitled in remainder would be injured by such lease, the bill was dismissed.

[Solomon Betts devised by his will his country-place, containing about fifty acres, situated within the limits of the city

of Baltimore, to his wife and Jacob G. Davis, *in trust* for the separate use of his daughter, Sarah Hitch, during her natural life, and after her death then for the separate use of his grand-daughter, Augusta Hitch, daughter of the said Sarah, during her natural life, and after her death for the use and behoof of the lawful issue of the said Augusta, and for the heirs and assigns of such issue for ever, if any child or descendant of hers there be living at the time of her decease, and if none, then to hold all said estate, property, and stock in trust for the separate use of his daughter, Mary Davis, during her natural life, and after her death then in trust as to the afore-said country-place for the use of his grandson Solomon Betts Davis, his heirs and assigns for ever. On the 4th of June, 1851, Augusta Hitch, during the life of her mother, Sarah Hitch, filed her bill asking the Court to have this land demised, as stated in the following opinion of the Chancellor, which also contains a full statement of the defence relied on in the answers of the defendants and of the proofs in the cause.]

THE CHANCELLOR:

This bill is founded upon the provisions of the Act of 1831, ch. 311, and it is supposed, and I think correctly, that the 5th section of the Act applies to the circumstances of the case, and would authorize the Court in decreeing the relief prayed, if by the pleadings and proofs it appeared that it would be for the interest and advantage of the parties to do so.

I do not concur in the view taken by the counsel for Mrs. Davis and Solomon B. Davis, that the party who applies to the Court to order a demise under this section of the law, must be the tenant in possession. The language of this section is: " That the Chancellor, or County Court aforesaid, shall have the same authority to decree a demise, or demises, under the rules and regulations as aforesaid, where the tenant of the par-ticular estate for life, or for years, or for other estate, shall be of full age, and shall pray for such decree." The effect of the section is to authorize the tenant of any particular estate, of full age, whether in possession or not, to apply to the Court,

and therefore this complainant, though her estate does not vest in possession until the death of her mother, Mrs. Sarah Hitch, has a standing to file the bill.

But I apprehend that, looking to the entire law, the Court is not at liberty to order a demise, unless it is made to appear affirmatively that the interest and advantage of all parties concerned, would be promoted by it, and such appears to have been the view of the solicitor, by whom the bill in this case was framed; the allegation being " that the said fifty acres," (the land proposed to be leased), " are at this time not as productive as they might be made, if they could be demised after the usual manner in the City of Baltimore, for terms looking to the creation of permanent ground-rents, which would be for the interest of all parties."

But the defendants, Jacob G. Davis and wife, and Solomon B. Davis, to whom the ultimate remainder is limited, whilst admitting that the property might be made more productive than it is now by proper cultivation, or by being leased on permanent leases, insist that should they ever become entitled to said property, these permanent leases at the present low prices of land, would be seriously injurious to them; and hence they deny the power of the Court to grant the prayer of the bill.

The proof in the cause sustains the theory of the answers, and shows most conclusively, that whilst the parties now in the possession and enjoyment of the property would be benefited by leasing it permanently, those to whom, under the will of Solomon Bates, it may ultimately pass, would, should that event happen, be materially injured, should it now be placed on permanent leases.

It is very true that, under the provisions of the will, neither Mrs. Davis nor her son, Solomon B. Davis, may ever have any interest in the property. This depends upon the death of Augusta Hitch, the complainant, without leaving issue living at that time. But should she so die, the limitations over to Mrs. Davis, and Solomon B. Davis, will take effect, and consequently, they are interested in the disposition which may be now made of the property; and the evidence clearly shows

that their interest is antagonistic to those who make the application to the Court. Under these circumstances, I do not see how the prayer of the bill can be granted.

The reference to the Acts of 1816, ch. 154, and 1818, ch. 193, and the incorporation of their provisions into the Act of 1831, under which the bill is filed, in my judgment, deny to the Court the power to demise permanently property situated as this is, when from the evidence it appears that though the interest of some of those in whom the title resides, will be promoted, the rights of others in the same property will be injured. It would, in my opinion, have been a stretch of authority in the legislature, to authorize the disposition of the property, in which several were concerned, upon the ground that some would be benefited, whilst others would be damnified; and I am aware of no law by which they have ever attempted to do so. By the 12th section of the Act of 1785, ch. 72, which authorizes the Court to direct the sale of lands in which, from infancy, or other incapacity, some of the joint owners are unable to agree, it is carefully provided that the power shall only be exercised upon its appearing that it will be for the interest and advantage of all parties, and I am not aware of any law in which a provision so manifestly just has been omitted.

It is to be regretted, certainly, that this conflict of interest should exist, but when it does exist, why should the law interpose to benefit one owner at the expense of another? I shall, therefore, dismiss the bill in this case, but as it is one of the first impression, and is not without equitable circumstances, it will be without costs.

LATROBE, for Complainant.
PRATT, for Respondents.